UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


SEVILLE HOMES, INC., et al.                                                    PLAINTIFFS


v.                                                      CIVIL ACTION NO. 3:05CV-477-S


NORTHERN INSURANCE COMPANY OF NEW YORK, et al.                  DEFENDANTS


**MEMORANDUM OPINION**


This matter is before the court on motion of the defendant, Northern Insurance Company of

New York, *et al.*[1] ("Northern"), for  summary judgment on the remaining claims in this action.

Seville Homes, Inc. and Randy Freeman (collectively, "Seville"), filed suit to recover damages

allegedly suffered due to Northern's actions in handling a claim concerning defects in Seville's

construction of a home for John and Denise Askin.

On January, 2002, Seville and the Askins entered into a contract for the construction of a

residence in Prospect, Kentucky.  Construction was completed in December, 2002, the parties closed

on the transaction, and the Askins took possession of the home.

Early in 2003, the Askins notified Seville that the basement and family room of the home

flooded during periods of rain.  Seville made repairs in an attempt to alleviate the flooding.  Seville

---

[1]Zurich North America is also named as a defendant in this action.  Zurich North America is apparently not a legal entity, but rather a trade name employed by Northern.  *See Notice of Removal, fn. 1.*

notified Northern of the issue on September 30, 2003.  Seville was apparently unable to remedy the problems and entered into a Conciliation Agreement with the Askins in which Seville acknowledged responsibility for the leaks.

By letter dated October 28, 2003, Northern advised Seville that it was investigating the continuing flooding of the Askins' basement, their claim for repair costs, and for reimbursement for water-damaged items stored in the basement.  The letter included a reservation of the right to deny coverage under the policy.

The Askins sued Seville and Northern over the unresolved problems.  Northern provided Seville a defense, maintaining a reservation of the right to "deny coverage under the terms, exclusions, conditions and definitions of the Northern policy..." (Northern May 19, 2004 Letter to Seville).  In May, 2004, without waiving its claims, the Askins accepted Northern's offer of $22, 628.25 to reimburse them for water damage to various items of personal property and for damaged carpeting in the basement.

The Askins' complaint sought damages for the home, to personal property, and emotional distress due to the proliferation of airborne fungal spores which the Askins feared could cause illness to their daughter.  On March 1, 2005, Northern negotiated a settlement by which it sought to resolve the claims of all parties to the *Askins* action.  Northern fully funded the settlement.  The Askins released all claims against Seville and Northern.  Despite Northern's impression that Seville would sign a release of its own claims against Northern, Seville declined to do so, and filed the present action in the Jefferson Circuit Court  seeking damages for injury to its business reputation, loss of business opportunities, and recovery of certain repair costs in attempting to remedy the defective construction.  Seville also seeks punitive damages.

Northern has moved for summary judgment on Seville's claim for breach of the insurance contract at issue.  Northern contends that it fulfilled all of the duties owed to Seville under the contract.  Northern paid the Askins claim for reimbursement for water-damaged personal property and carpet in the basement.  Northern provided a defense to Seville in the Askins litigation. Northern negotiated a settlement of all claims against Seville, fully funded the settlement, and performed all of the obligations imposed by the settlement agreement.  Northern obtained releases from the Askins as to all claims.  Thus Northern urges that no breach of contract claim can exist relating to the Askins' claims.  Additionally, Northern urges that there is no coverage under the policy for $5,841.00 Seville seeks for costs of repairs in attempting to alleviate the leaking condition because they were incurred voluntarily prior to the tender of the claim to Northern and because they were not related to "property damage" caused by an "occurrence," as required by the policy terms.

Seville's response to the motion does not address the assertion that Northern fully complied with its contract obligations by providing a defense and attaining a settlement and release on behalf of Seville.

To prove a breach of contract, the plaintiff must establish the existence of a valid contract, a breach of the contract, and damages resulting from the breach.  *Powerscreen USA, LLC v. D & L Equipment, Inc.*, 661 F.Supp.2d 705 (W.D.Ky. 2009).  Seville has not identified any contractual duty which was unfulfilled.

The policy in issue is a Commercial General Liability ("CGL") policy which states, in pertinent part, that:

This insurance applies to..."property damage" only if:

...The..."property damage" is caused by an "occurrence"...

CGL Policy No. RGM 25704421, Sec. 1(b)(1).

> An "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition."

*Id*., Sec. V – Definitions.

Under Kentucky law, CGL policies do not afford coverage for defective workmanship claimed against a homebuilder.  A claim for faulty workmanship is not an "occurrence" under a CGL policy because it is not accidental.  *Cincinnati Ins. Co. v. Motorists Mutual Ins. Co.*, 306 S.W.3d 69 (Ky. 2010); *accord, Parrott v. Hoosier State Construction, Inc.*, 2006 WL 861307 (W.D.Ky. March 28, 2006).  Seville has offered no argument to the contrary.

Seville seeks reimbursement for repair costs incurred prior to tender of the Askins' claim to Northern in attempting to repair leaks related to construction of the home.  These repair costs are not covered under Seville's CGL policy.

Seville's claim for breach of contract will be dismissed.

Northern seeks summary judgment on the remainder of Seville's bad faith claims arising from Northern's handling of the Askins' personal property claims and Seville's claim for reimbursement of repair costs in attempting to remedy the leaks in the home.  Northern's ground for summary judgment is Seville's failure to establish that Northern's conduct caused Seville injury. The court agrees, and will grant summary judgment in favor of Northern on the remaining claims.

Seville has come forward with no evidence of injury suffered because of Northern's conduct. Seville contends that it suffered lost business opportunities and damage to its reputation as a result

of being sued by the Askins which it contends, in turn, was caused by purportedly inept handling and delay in paying the Askins' claim.

Assuming, *arguendo*, that Seville was sued because of a delay in resolving the personal property claim ,[2] Seville has failed to offer any proof of the injury it claims to have suffered. Further, it has failed to connect any such injury to the filing of a lawsuit against it.  At the summary judgment stage, a party may not rely on bald allegation of injury and causation.  It must come forward with evidence which would permit a reasonable jury to find in its favor on its claims.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King*

---

[2]It is unclear how a purported delay in paying the Askins' personal property claim could provide the impetus for the Askins' filing of the suit, as the Askins accepted Northern's offer of $22,628.25 in may, 2004 and did not file suit until August of 2005. Seville's claim for bad faith in Northern's handling of the Askins' claims for non-personal property and bodily injury claims were dismissed by separate order (DN 105).

*Corp.*, 303 F.2d 425 (6th Cir. 1962).

With respect to its claim of lost business opportunities, Seville states that it lost its membership with the Home Builders Association and therefore lost the opportunity to build a home in the Home-A-Rama show.[3]  Northern obtained testimony from a representative of the Association that Freeman was expelled from the Association in 2004 for failure to satisfy continuing education requirements.  (Brangers Depo., pp. 37, 43).  Seville has not refuted this testimony.

Seville contends that it would not have been allowed to build homes in certain subdivisions because Seville's reputation was diminished in the minds of developers in those subdivisions.  At his deposition, Freeman was only able to identify one developer.  That developer, Bob Duane, of Duane Development, averred in an affidavit that he was not aware of the Askins lawsuit and that he never refused to allow Seville to build a home in one of his developments because of that litigation.  Again, this testimony stands unrefuted.  Seville contends that he intended to build ten to twenty more homes in the Gen Oaks subdivision.  He did not provide evidence from the developer or developers associated with the subdivision that they knew of the suit or refused to permit him to build there.

He contends that, as a result of the lawsuit, he lost confidence and was unable to move forward in building those intended homes.  This can hardly be characterized as a "business loss," as it amounts to nothing more than speculation as to an opportunity unpursued.  Further, there has been no evidence offered that the filing of the Askins lawsuit, as opposed to the construction failures in the Askins' Glen Oaks home, would require him to take "too great a risk because of the fact that the Askins' home was located in the same subdivision."  Response, pp. 6-7.

---

[3]No year has been identified.

In his deposition and in answers to interrogatories, Freeman was unable to identify competitors with knowledge of the Askins lawsuit who used the knowledge to disadvantage him. Further, he cannot identify any specifics identifying this supposed competitive advantage. Seville has offered nothing more than speculation and the names of six of Seville's competitors. Northern obtained the testimony of four of these competitors, all who stated that they were not aware of the Askins' claims, were not aware of the lawsuit, did not ask Freeman about the suit, never used information about Seville to Seville's competitive disadvantage, and were unaware of any business opportunity lost by Seville. Duane Aff., ¶¶. 3-4, 6-7; Theineman Aff., ¶¶ 5-8; Yates Depo., pp. 11, 14-15; Baker Depo., pp. 11, -15-16. A fifth builder, Rob Brady of Brady Built Homes, LLC could not be located. It was determined that he business has closed. Seville has provided no evidence to contradict the clearly supported supposition that Seville's claim of lost business opportunities is meritless.

Finally, Seville produced a QuickBooks accounting file purportedly to establish that it suffered a $1 million loss from 2004 to 2005. Seville has only offered a snapshot of gross income in one given year and calls it a "$1 million loss." Seville did not offer any calculations of net profit. Further, there was a $900,000.00 increase between 2003 and 2004. Seville's accountant, Anthony White, testified that the sales Seville reported for the period 2004-2007 increased by $16,000.00 from the sales during the three-year period preceding the Askins' claims. White Depo., pp. 83-84. However, Seville need not prove its damages on summary judgment. However, it must show that it suffered damages as a result of Northern's conduct and that those damages are identifiable and not speculative. Finally, Seville's failure to offer proof that its sales losses, if any, were caused by Northern is fatal to its claims.

Forth these reasons, we conclude that Seville cannot establish causation or damages.

Northern is entitled to summary judgment on the remaining claims against it.

A separate order will be entered this date in accordance with this opinion.


**IT IS SO ORDERED.**

March 29, 2012

**Charles R. Simpson III, Judge**
**United States District Court**